

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 11, 1960

Honorable Jack N. Fant
County Attorney
El Paso County
El Paso, Texas

Opinion No. WW-881

Re: Authority of the Commissioners
Court of El Paso County, under
Articles 6078 and 6081e, V.C.S.,
to enter into a contract with
the City of El Paso for the build-
ing, operation, maintenance and
management of a golf course and
clubhouse in Ascarate Park,
theretofore solely acquired,
managed and controlled by the
county, the validity of said con-
tract and liability of the county
to the city under said contract,
and authority of the county to ex-
pend county funds for improvements
paid for by the city under said
contract.

Dear Mr. Fant:

In your letter of February 25, 1960, you request the
opinion of this Department on the following three questions,
which we quote:

"1. Was the Commissioners' Court authorized
under Articles 6078 and/or 6081e, V.A.T.C.S. to en-
ter into a contract with the City of El Paso, for
the building and operation of a golf course and
clubhouse in Ascarate Park, a County Park thereto-
fore acquired, controlled and managed solely by the
County under the above statutes, whereby the City
assumed the responsibility of the operation, main-
tenance, management and conduct of the golf course,
clubhouse and concessions on the premises, with
each party to receive one half of the revenue there-
from after expenses?

"2. Was or is such contract valid?

"3. Is the Commissioners' Court liable to
the City or is it authorized to expend County
funds to the City for funds expended by the latter
for improvements placed on said golf course and
clubhouse, etc., by virtue of said purported con-
tract or otherwise?"

The facts stated by your brief are as follows:

The Commissioners' Court of El Paso County ordered an election held to determine whether the County should levy and collect a tax for the purpose of acquiring and improving lands for county park purposes. An election was duly held under Articles 6078 and 6081e, Vernon's Civil Statutes, on August 23, 1937. The voters approved and on October 11, 1937, the land was acquired from the United States Government. The County then built on the land what is now known as Ascarate Park. The park was acquired, then operated, maintained and controlled solely by the County until sometime around January 24, 1954, at which time the City of El Paso and the County of El Paso passed resolutions to the effect that it would be to the best interests of the people of the City and County for the two to join together in improving Ascarate Park by constructing therein a twenty-seven hole golf course. On December 23, 1954, the City and County entered into the following agreement:

". . . NOW THEREFORE, in consideration of the premises, the City and County agree as follows:

"(1) The title to the above property is vested in the County of El Paso, subject to certain restrictions and reversionary clauses, and the County hereby agrees that it will not use said park nor any part thereof in such a fashion as to cause the same to revert to its Grantor, the United States of America.

"(2) The City and County will cause to be constructed a clubhouse on the golf course site at a cost to be mutually agreed upon, and each party agrees to provide one-half of the cost of construction, including architect's fees, at such times as called for in the contracts for such services and construction, and the City and County agrees that the work shall be done by contract let upon competitive bids.

"(3) The City agrees to take the responsibility of the operation, maintenance, management and conduct of the golf course, clubhouse, and concessions on the premises, and the City further agrees that it will account to the County once each month for all receipts and disbursements in connection with said golf course and agrees that one-half of the revenue after expenses shall be

paid to the County.

" . . .

"(7)  This contract shall be revocable on
March 1 of any year, provided however that
three months' written notice be given to the
opposite party and at which time the parties
shall enter into and agree upon new opera-
tion provisions. . . ."

This operating agreement was adhered to by the City and
County until January, 1960.  On January 18, 1960, the Commis-
sioners' Court passed a resolution stating in effect that said
contract with the City would be terminated as of March 1, 1960,
and that the golf course would then be operated by El Paso County.
By letter dated January 22, 1960, the Mayor informed the Commis-
sioners' Court that the City would turn over the golf course to
the County as of March 1, 1960.  At that time, the County was to
assume the entire management, control and financial support of
the golf course and clubhouse.

Art. 6078  "Section 2.  All parks acquired by
authority of this Act shall be under the control
and management of the county acquiring the same,
provided that the Commissioners Court may by
agreement with the State Parks Board turn the
land over to the State Parks Board to be operated
as a public park; the expense of the improvement
and operation of such park to be paid by the county
and/or cooperative Federal agencies according to
the agreement to be made between such county and
the State Parks Board."

Art. 6081e  "Section 3.  All parks acquired by
authority of this Act shall be under the control
and management of the city or county acquiring
same or by the city and county jointly, where they
have acted jointly in acquiring same, provided that
the Commissioners' Court and the City Commission or
City Council may, by agreement with the State Parks
Board turn the land over to the State Parks Board
to be operated as a public park, the expense of the
improvement and operation of such park to be paid
by the county and/or city, according to the agree-
ment to be made between such municipalities and
the State Parks Board."

In Opinion O-905, dated December 5, 1939, by a former Attorney General, this Department said:

"'Counties being component parts of the State, have no powers or duties except those clearly set forth and defined in the Constitution and statutes.  The statutes of Texas have clearly defined the powers, prescribed the duties and imposed the liabilities of the Commissioners' Court, the medium through which the different counties act, and from these statutes must come all the authorities vested in the counties.'  Edwards County v. Jennings, 33 S.W. 585 (Civ.App. 1895); affirmed, 35 S.W. 1053.

"Article 6078 refers exclusively to parks bought and maintained by a county, and Article 6080 refers exclusively to parks bought and maintained by a city.  Any authority for the purchase of a park by the county to be maintained by the city must come if at all from Article 6081e.  Section 3 of this latter article provides, specifically, that park land acquired under its provisions shall be managed and controlled by the city or county acquiring same.  If the park is acquired jointly by the city and county, they must jointly control it. No authority is to be found here for acquisition by the county and management and control by the city, or vice versa."  (Emphasis added)

In Opinion No. 0-2594, dated August 19, 1940, also by a former Attorney General, it is stated that:

". . . It is the . . . opinion of this Department that if a county park was established under authority of Article 6078 and a natatorium was constructed in said county park that the authority to manage and control said park and park natatorium would be in the county commissioners' court and said court would have no authority to delegate such control and management to any school district."

The authority of the Commissioners' Court as the governing body thereof to make contracts in its behalf is strictly limited to that conferred either expressly or by fair or necessary implication by the Constitution and laws of this State. Roper v. Hall, 280 S.W. 289 (Civ.App. 1925, rehearing den.)

> "It is a well-recognized principle of
> law that where the Legislature prescribes a de-
> finite, certain method of procedure for a city
> or county, all other methods are by implication
> of law excluded." Foster v. City of Waco, 113
> Tex. 352, 255 S.W. 1104 (1923).

In answer to questions one and two, the contract which thereby surrendered the management and control to the city was a contract without the proper authorization and said contract was and would be now invalid between the parties if the County had not already reassumed its proper supervision and control.

In discussing the liability of the County to pay for the improvement placed in Ascarate Park by the City, we quote from the case of Sluder v. City of San Antonio, 2 S.W.2d 841 (Comm. App. 1928), which states the principle that

> ". . . the rule thus firmly established
> by the courts of this state rests upon the obliga-
> tion of a municipality to do justice when it has
> received money, property, or services of another.
> Under such circumstances the plainest principle of
> justice requires that it should not be permitted
> to receive and retain the benefits of a contract
> without paying the reasonable value thereof."

We quote from another case which says:

> ". . . that such a recovery is not in any
> sense a recognition of the validity of the contract
> which the fundamental law has made valid, but rather
> the recovery is upon another principle of law which
> imposes a duty and legal liability to pay the reason-
> able value of the property or service of another and
> retained under circumstances justifying the assumption
> that there was an intention to pay." Austin Bros. v.
> Montague County, 10 S.W.2d 718 (Comm.App. 1928).

We have been unable to find a provision in the contract whereby the county agreed to pay the city for any improvements which the city placed upon the park, and in answering your third question, it is not necessary to discuss the legality or authorization of such a provision. From the other information submitted, there is no indication of circumstances which would give rise to an implied promise by the County to pay the City for the improvements, nor have we discovered any indication from the facts presented, either before said improvements were made or during the time such improvements were being made, that the City expected to receive compensation for the improvements.

There are numerous holdings to the effect that where benefits of a contract have been received that there may be a recovery under quantum meruit.  We think that the facts, as presented, do not fit the legal requirements of the cases wherein quantum meruit has been allowed in this State.  An essential prerequisite to any liability is the acceptance of benefits by one sought to be charged, rendered under such circumstances as reasonably to notify him that one performing such services was expecting to be paid compensation therefor.

We are, therefore, of the opinion that the county is not liable under the contract or under quantum meruit.

### S U M M A R Y

El Paso County cannot lawfully delegate the control and supervision of a county park acquired under Article 6078 or Article 6081e, Vernon's Civil Statutes, to the City of El Paso, and such a contract is invalid.  The County is not liable to the City for the improvements placed in such park under a contract where no provisions were made for payment nor the facts presented give rise to quantum meruit.

Yours very truly,

WILL WILSON
Attorney General of Texas

By William H. Pool, Jr.
William H. Pool, Jr.
Assistant

APPROVED:
Opinion Committee
W.V.Geppert, Chairman

L. P.Lollar
C. Dean Davis
Marietta McGregor Payne

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Leonard Passmore

WHP:zt